## Case No. 14,076.

### TOLAND v. SPRAGUE.

[14 Am. Jur. 302.]

Circuit Court, E. D. Pennsylvania.   Oct. Term, 1834.

COURTS — FEDERAL JURISDICTION — CITIZENSHIP — FOREIGN DOMICIL.

Whether the circuit court of the United States in one state has jurisdiction of a suit against a citizen of another state, domiciled and resident in a foreign country, by process of foreign attachment. the defendant himself not being in the district at the commencement of the suit, and not served with the process.

[This was a suit by Henry Toland, a citizen of the state of Pennsylvania. against Horatio Sprague, a citizen of the state of Massachusetts.]

Mr. Gilpin, for plaintiff.
F. W. Hubbell, for defendant.

HOPKINSON, District Judge. This suit, as appears by the writ, is a foreign attachment, and an order is endorsed on the writ to attach the goods, chattels, rights and credits of the defendant in the hands of certain persons named, which has been done. On the part of the defendant a motion has been made to quash the writ and the proceedings upon it, on the ground that the defendant is a citizen of Massachusetts, against whom this suit cannot be maintained in this court, as it has no jurisdiction in such a case. To support this position the judgment of this court in the case of Hollingsworth v. Adam has been cited, as reported in 2 Dall. [2 U. S.] 396. The defendant, in that case was stated in the writ to be a citizen of the state of Delaware, and an affidavit was produced of the fact that he was so. Upon this it was alleged that the federal courts had no jurisdiction of the suit. The objection was founded on the 11th section of the judiciary act [1 Stat. 78], which provides that "no person shall be arrested in one district for trial in another, in any civil action before a circuit or district court,—and no civil suit shall be brought before either of the said courts against an inhabitant of the United States, by any original process, in any other district than that whereof he is an inhabitant at the time of serving the writ." In the case referred to. the court quashed the writ. If the facts of the case now before us were the same with those of Hollingsworth v. Adam, we should not hesitate to follow that decision. But are they so? By the affidavit here produced and filed, the truth of which has not been contradicted. it appears that Horatio Sprague, the defendant, although not denied to be a citizen of the United States, is not now. and for a long time past has not been. an inhabitant of or residing in the United States. but that for a long time, to wit, ten years and more, he has been settled and residing in and an inhabitant of Spain, being there largely engaged in business as a merchant and trader; and that he has not within the time stated, been within the United States, nor has he, to the affirmant's belief, any intention of returning to the United States, and that the said Horatio is now, and for some time past has been, a consul of the United States at Gibraltar, in Spain aforesaid; which is proved by a certificate from the department of state.

The question is whether a defendant in those circumstances is within the provision of the 11th section of the judiciary act, which has been referred to, and entitled to the exemption or privilege thereby to a certain description of persons? Does he bring himself within the terms of that description? He takes his ground on the words of the act, and alleges that he is a citizen of the United States; that this is a suit brought against him by original process, and that he is not an inhabitant of the district in which the suit is brought, nor was he found within it at the time of serving the writ. If the words of the act had been that no suit should be brought against a citizen of the United States in any other district but that whereof he is a citizen, it would be enough for the defendant to show that he is a citizen of the United States, and is not a citizen of Pennsylvania, to bring himself under the protection he claims from this suit, without any further inquiry as to the state to which he does belong, or the place of his actual residence. But the act speaks of inhabitants, not of citizens, in this part of it. It was therefore indispensable for the counsel of the defendant to prove, and such has been his effort, that in the construction of this provision the descriptive term "inhabitant" means and is synonymous with "citizen." If he has succeeded in this he has made out his case. For this purpose he has cited several adjudged cases. Nothing is more reasonable than that general expressions used by a judge shall be considered in connexion with the particular subject to which they are applied; and as an authority they will seldom be carried beyond the case to be decided. As to Hollingsworth v. Adam, in 2 Dall. [2 U. S.] 396, it cannot be doubted that that was a civil suit by original process, to wit. a foreign attachment brought by a citizen of Pennsylvania against a citizen and inhabitant of the state of Delaware, then residing in Delaware. So it appeared on the plaintiff's writ, and no evidence was offered to contradict or explain it. Such is not the case before the court. In Read v. Bertrand [Case No. 11,601], the plaintiff, a merchant of New York, entered into a contract in the year 1818 with the defendant to furnish him with an assortment of jewellery, which he was to take from place to place in the United States, to sell on commission. After passing through many states, he went to New Orleans, and opened a store there for the sale of the goods. In 1819 he came to Philadelphia to meet the plaintiff concerning their mutual business. He afterwards proceeded to Havana and New Orleans, and came

again to Philadelphia, where he wrote to the plaintiff at New York, informing him that he came to have a settlement with him. While waiting at Philadelphia for the plaintiff, he was arrested at his suit. It is such a state of facts the learned judge had under his eye, and to which his observations must be applied. He says, and it cannot be questioned, for he uses the very words of the act of congress, that one of the parties to a suit must be a citizen of the state where the suit is brought and the other a citizen of some other state. As the clear consequence of this position, he says that the plaintiff, in the case before him, being a citizen of New York, the court could not entertain jurisdiction of the suit, unless the defendant were a citizen of Pennsylvania at the time the suit was brought. He proceeds to declare that judicial citizenship, or that species of citizenship intended by the constitution and the act of congress, is nothing more nor less than a residence or domicil in a particular state, the person being at the same time a citizen of the United States. The domicil may be changed from one state to another, but the removal must be bona fide and permanent, not temporary; and the intention is to be gathered from his conduct, declarations. &c.

The case then before that learned and discriminating judge was one in which the plaintiff was a citizen of the United States, resident in New York, and the defendant also a citizen, residing in Pennsylvania, where the contract between them was made; and the question was whether his removal to New Orleans with an intention of making it his residence was permanent or temporary. If the latter, then his domicil continued in Pennsylvania, and a suit was well brought; if otherwise, the suit was not well brought, because neither of the parties was, in any sense, a citizen of the district or state in which it was brought. This was a question of fact which was left to the jury. It is sufficient to remark on this case that no opinion was given, nor was it called for, on the meaning of the term "inhabitant," in a subsequent part of the 11th section of the act, nor upon this whole clause in it,—relations with other parts of the section, and to which we are now required to give a construction. An argument, indeed, has been raised upon the general expressions of the judge to bring them to bear on the case; but, however strong the argument may be, we must keep in mind that they were intended for the question then under consideration, for the state of facts then in the view of the court, and can be received as a judicial decision no further. In the case cited the removal or change of residence was from one state to another, and the question was of which of the United States he should be judicially considered a citizen, and in such a case the judge says that he was a citizen of the state in which he resides, or has his domicil. It seems to be impossible to give any other

meaning to the words of the act, "or the suit is between the citizens of a state where the suit is brought, and a citizen of another state." This clause will be senseless unless some criterion be adopted to fix what shall make a man a citizen of one or another state; of one state in contradistinction to the others; and residence is the only or the most certain and convenient criterion that can be taken. But such a case is different in point of fact from one in which the question is not which state, as between two of the United States, the defendant is a citizen, but where he has no residence or domicil in any state, having removed to a foreign country; and consequently the criterion of residence in one or the other state cannot be applied to him. How far he may be embraced by the principle is another matter; but this opinion of Judge Washington, as well as another that has been cited, relates entirely to the construction to be given to that part of the 11th section of the act which grants jurisdiction to the federal courts in suits "between a citizen of the state where the suit is brought, and a citizen of another state," that is, where both parties are citizens residing in the United States; and he gave no consideration at all to the meaning of that part of the section which we are now called upon to construe.

We will now consider the law as it has a direct bearing on the case before us. The 11th section of the act professes to designate the original cognizance of the circuit courts of the United States, and it is thus broadly given: "Of all suits of a civil nature at common law or in equity, when the matter in dispute exceeds the sum or value of five hundred dollars, and the United States are plaintiffs or petitioners, or an alien is a party, or the suit is between the citizens of the state where the suit is brought, and a citizen of another state." This is the general grant of jurisdiction, and we find a designation or description of the circumstances which shall constitute an individual a citizen of one or another state. In a subsequent part of this section certain limitations or exceptions are made to this grant of jurisdiction, the object of which appears to be to prevent the vexatious and oppressive use of it, and to have it exercised with as little injury and inconvenience to the party defendant as possible. It is provided that "no person shall be arrested in one district for trial in another, in any civil suit before a circuit or district court." Without this, a defendant might have been taken in New Orleans or Maine, and brought for trial in Philadelphia. But further, it is provided that "no civil suit shall be brought before either of the said courts, against an inhabitant of the United States, by any original process in any other district than that whereof he is an inhabitant, or in which he shall be found at the time of serving the writ." We see here the same intention to prevent oppressive proceed-

ings in a suit carried on. The first special provision enacts that the arrest of the person shall not be made in one district for trial in another; and the other, that no civil suit shall be instituted against a defendant in any district but that which he inhabits, or unless he shall be in another. It may be that a part, perhaps a most material one, of the motive or intention of these enactments was a jealous respect to the territorial rights and immunities of the several states, who would not allow their inhabitants to be arrested by process from the courts of another state, or even compelled to attend a suit there, unless they gave up this protection by going voluntarily into another state, and exposing themselves to a service of the writ. If this were in the view and intention of congress in making these enactments, it will have an important influence on the question of their application to a case of a citizen not residing within or under the protection of any state. The phraseology of this section has been framed with care, and should be carefully attended to. In declaring the jurisdiction of the courts generally, it is given over suits where an alien is a party, or the suit is between citizens of different states. But where the limitation to this power is imposed, or the exemption from it described, the law no longer speaks of a citizen of one state or another or of the United States, but extends the protection or privilege from arrest to every person, be he citizen or alien; and no person, even though he should not be an inhabitant, but a transient passenger, shall be arrested in a civil action in one district for trial in another. This looks like territorial immunity, for such a person, however distant from his residence, may be arrested in passing through a state, by process from a federal court of that district, but not of another. Proceeding on the same principle, either of personal privilege or state rights or both, they enact that "no civil suit shall be brought before either of the said courts, against an inhabitant of the United States, by any original process in any other district than that whereof he is an inhabitant or in which he shall be found at the time of serving the writ." Who, then, is exempted from the general power of the court given by the first part of the section, or rather to what description of a party to a suit is the limitation or modification of that power to be applied? To an inhabitant of the United States, and necessarily an inhabitant of some district of the United States; and whether he be an alien or a citizen, while he is an inhabitant of any district he has this protection of the law, and no longer. When he ceases to be an inhabitant of any part or district of the United States, he withdraws himself from the operation of this clause of the judicial act, and from the privilege he enjoyed under it as an inhabitant of the United States. Can we say that a debtor, who abandons his domicil here, and assumes one in a foreign country, shall retain a privilege or protection, which was accorded to him by the name and description of an inhabitant of the United States, and not otherwise? It must be kept in mind that we are now considering the question of jurisdiction only as it is dependent upon or regulated by this clause in the judicial act. There is another view of this question, which has not been taken in the argument, and which is too grave and important in itself to be disposed of on a summary motion like the present. The question we allude to is whether the original constitutional jurisdiction of the federal courts extends to non-resident citizens, and whether they fall, in certain circumstances, within a limitation of that jurisdiction. Supposing that the restrictive clauses we have referred to had not been enacted, or putting them aside, would non-resident citizens be in any way or by any process, subject to the jurisdiction? When the constitution, in creating the judicial power of the government, speaks of controversies "between citizens of different states," and the judicial act of suits "between a citizen of the state where the suit is brought, and a citizen of another state"—are we, necessarily, or on a reasonable construction of these clauses, to understand that resident citizens only are intended to be embraced by their power. The defendant will have the full benefit of this objection to our jurisdiction as of any other matter that may avail him, on a formal plea to the jurisdiction. The court will give a judgment that may be revised by a higher tribunal.

If, as in the case of Hollingsworth v. Adam [supra], this writ were issued in a direct violation of the plain language of the act of congress, we should not refuse to quash it, but, as this is not the case, however cogent the argument may be that urges us to the same conclusion, we will put the party to his plea. The motion to quash is overruled.

[NOTE. The defendant entered special bail to the attachment, and, having appeared and pleaded to the same, the case was tried by a jury on the 21st day of November, 1836, and a verdict, under the charge of the circuit court, was rendered for the defendant, on which a judgment was entered by the court. This judgment was reversed by the supreme court in 12 Pet. (37 U. S.) 300.]